UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

─────

TROY J. BRIGHAM,

                Plaintiff,                     Case No. 1:12-cv-364

v.                                       Honorable Robert Holmes Bell

STATE OF MICHIGAN et al.,

                Defendants.

_____/

## OPINION

      This action was removed to this Court by Defendants Muskegon County, Hon. Timothy G. Hicks, Dale J. Hilson and Susan K. Patelski. The removed action, brought by prisoner Troy J. Brigham, is a civil complaint for alleged violations of his state and federal rights arising from criminal proceedings in the Muskegon County Circuit Court. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff Brigham's federal claims will be dismissed because Defendants are immune or Plaintiff failed to state a claim against them. Plaintiff's state-law claims will be remanded to the Muskegon County Circuit Court.

**Factual Allegations**

Plaintiff is incarcerated in the Carson City Correctional Facility under three separate judgments of conviction entered by the Muskegon County Circuit Court.  The most recent judgment was entered by the court on April 12, 2010, following Plaintiff's plea of nolo contendere to the following offenses: one count of first-degree home invasion, two counts of second-degree home invasion, one count of safe breaking, two counts of possession of a firearm during the commission of a felony, and one count of being a felon in possession of a firearm.  On April 12, 2010, the trial court sentenced Plaintiff as an habitual offender to imprisonment of thirteen-and-a-half to thirty years for the first-degree home invasion conviction, ten to twenty-five years each for the second-degree home invasion convictions and the safe breaking conviction, two years for each of the felony-firearm convictions and ten to twenty-five years for the felon-in-possession conviction.  Petitioner also is serving a sentence of twenty-seven to twenty-five years for breaking and entering a building with intent imposed on February 8, 2010, and concurrent sentences of three to thirty years for each of four uttering and publishing convictions imposed on June 24, 2003.

Plaintiff filed a delayed application for leave to appeal the April 12, 2010 judgment of conviction in the Michigan Court of Appeals, which was denied on September 24, 2010.  The Michigan Supreme Court subsequently denied Plaintiff's application for leave to appeal on March 8, 2011.

Plaintiff's civil action arises from the proceedings leading up to the April 12, 2010 judgment of conviction.  Plaintiff sues the State of Michigan, the City of Muskegon, Muskegon County, Muskegon County Circuit Court Judge Timothy G. Hicks, Senior Assistant Prosecuting Attorney Dale J. Hilson, Court Reporter Susan K. Patelski and attorneys David B. Kortering and

- 2 -

Ronald D. Ambrose. Plaintiff alleges that a hearing was held before Judge Hicks on his motion to suppress his statement to Officer Sypien. The hearing was later transcribed by Defendant Patelski. Plaintiff appears to allege that the transcript of the suppression hearing was altered in order to impede his ability to challenge the admissibility of his statement. Plaintiff claims that his trial counsel, Defendant Kortering, failed to review the audio/video tape of the hearing upon Plaintiff's request. Plaintiff also raised the issue with his appellate counsel, Defendant Ambrose, who failed to investigate or raise the issue on appeal. Plaintiff further alleges that Defendants Hicks and Hilson failed to fulfill their duties to protect Plaintiff's constitutional rights in the criminal proceedings and that Defendants engaged in a conspiracy to violate his federal rights. For relief, Plaintiff seeks compensatory and punitive damages from each of the Defendants.

## Discussion

### A. *Heck*-bar

Plaintiff's claims against Defendants appear to challenge the 2010 judgment of conviction and his resulting incarceration by the State of Michigan. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not

construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original).  In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted).  Plaintiff's allegations clearly call into question the validity of his conviction.  Therefore, his action is barred under *Heck* until his criminal conviction has been invalidated.

Even if Plaintiff's action was not *Heck*-barred, the named Defendants either are immune or Plaintiff fails to state a federal claim against them as set forth below.

    B.    **Immunity**

       1.    <u>State of Michigan</u>

The State of Michigan is entitled to sovereign immunity.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from

suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In addition, the State of Michigan is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the State of Michigan must be dismissed.

2.   <u>Defendant Hicks</u>

Judge Hicks is immune from Plaintiff's claims for monetary damages under the doctrine of judicial immunity. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12. Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. Accordingly, Judge Hicks is absolutely immune from liability.

- 5 -

3.    <u>Defendant Patelski</u>

Defendant Patelski also is immune from Plaintiff's claims for monetary damages under the theory of quasi-judicial immunity.  Absolute judicial immunity is extended to non-judicial officers who perform "quasi-judicial" duties.  "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune is also protected from suit seeking monetary damages); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Lyle v. Jackson*, No. 02-1323, 2002 WL 31085181, at *1 (6th Cir. Sept. 17, 2002) (quasi-judicial immunity applied to claims against state court clerks who allegedly failed to provide prisoner with requested copies of previous filings and transcripts); *Bradley v. United States*, 84 Fed. App'x 492 (6th Cir. 2003) (federal court clerk); *Washington v. Shelby County*, No. 88-6321, 1989 WL 63896 (6th Cir. 1989) (court reporter is entitled to judicial immunity when acting within the scope of his or her official duties).  Defendant Patelski clearly was acting on behalf of the court when she transcribed the hearing on Plaintiff's motion to suppress.  Because Defendant Patelski is entitled to quasi-judicial immunity, Plaintiff may not maintain an action for monetary damages against her.  Plaintiff seeks only monetary damages in this case, thus, his claims against Patelski must be dismissed.

4.    Defendant Hilson

Finally, Defendant Hilson is entitled to absolute immunity for his actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).

Plaintiff makes few specific factual allegations against Hilson, but generally contends that he was responsible for the prosecution of Plaintiff's case and had a duty "to ensure that justice was done," (Compl., Page ID#13), which clearly implicates the prosecutor's role as advocate. Consequently, Defendant Hilson is entitled to absolute immunity. Because Plaintiff seeks only monetary damages, his claims against Hilson must be dismissed.

- 7 -

C.    **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

1.    Defendants Kortering and Ambrose

Plaintiff claims that his trial counsel, David Kortering, and his appellate counsel, Ronald Ambrose, violated his Sixth Amendment right to the effective assistance of counsel.  To state

a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). In *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and is free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous unpublished decisions. *See, e.g.*, *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007); *Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998), *amended on denial of reh'g*, 243 F.3d 234 (6th Cir. 2001); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005); *Dallas v. Holmes*, 137 F. App'x 746, 752 (6th Cir. 2005); *Carswell v. Hughes*, No. 99-1795, 2000 WL 658043, at *1 (6th Cir. May 9, 2000). Because Plaintiff's trial and appellate attorneys did not act under color of state law, no claim

under § 1983 can be maintained against then.  Accordingly, Defendants Kortering and Ambrose must be dismissed from this action.

2.    <u>City of Muskegon and Muskegon County</u>

Plaintiff also sues the City of Muskegon and Muskegon County.  A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff.  *Los Angeles County v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)).  In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.  Plaintiff's action must fail because he has not alleged that a policy or custom caused him to be deprived of a constitutional right.  Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate.  *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the City of Muskegon and Muskegon County must be dismissed for failure to state a claim upon which relief may be granted.

D.    **Remand**

In his complaint, Plaintiff Brigham asserts violations of the Michigan Constitution and the Michigan Court Rules.  The doctrine of supplemental jurisdiction, originally set forth in *United*

*Mine Workers v. Gibbs*, 383 U.S. 715 (1966), was codified by 28 U.S.C. § 1367.  Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (holding that a district court should consider several factors in deciding whether to exercise supplemental jurisdiction, including "the avoidance of multiplicity of litigation, and [that it should] balance those interests against needlessly deciding state law issues").  A district court may also "consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case.  If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account" in determining whether the balance of factors supports a remand of the state-law claims. *Carnegie-Mellon*, 484 U.S. at 357.

More generally, the Sixth Circuit has stated as a "rule of thumb" that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).  *See also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

Applying these factors here, the Court finds that the Sixth Circuit's "rule of thumb" should govern, and that this case should be remanded to state court upon the Court's dismissal of Plaintiff's federal claims.  First, this action was removed to this Court less than a month ago.  During

the brief time this case has been pending before the Court, there has been no Rule 16 scheduling conference, nor has the Court had any occasion to conduct any proceedings or issue any rulings apart from the present decision.  Thus, the interests of judicial economy would not be served by the Court exercising supplemental jurisdiction over Plaintiffs' state-law claims.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952–53 (6th Cir. 2010) (affirming a district court's decision to remand a case to state court after the plaintiffs had voluntarily dismissed all of their federal claims, where this dismissal occurred within a few days after removal, and there had been no discovery or filing of dispositive motions). Rather, this exercise of jurisdiction instead would result in needless federal-court rulings on exclusively state-law issues.  Accordingly, Plaintiff's state-law claims will be remanded to the Muskegon County Circuit Court pursuant to 28 U.S.C. § 1447(c).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed pursuant to 28 U.S.C. § 1915A, because Defendants are immune or Plaintiff fails to state a claim upon which relief may be granted.  Plaintiff's state-law claims will be remanded to the Muskegon County Circuit Court.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order consistent with this Opinion will be entered.


Dated: <u>May 1, 2012</u>                              /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE